Matter of South Point Auto Ctr., Inc. v New York State Dept. of Motor Vehs. (2018 NY Slip Op 04057)





Matter of South Point Auto Ctr., Inc. v New York State Dept. of Motor Vehs.


2018 NY Slip Op 04057


Decided on June 7, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 7, 2018

525332

[*1]In the Matter of SOUTH POINT AUTO CENTER, INC., Petitioner,
v
NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES et al., Respondents.

Calendar Date: April 25, 2018

Before: Garry, P.J., Lynch, Clark, Aarons and Rumsey, JJ.


Towne, Ryan & Partners, PC, Albany (James T. Towne Jr. of counsel), for petitioner.
Barbara D. Underwood, Attorney General, Albany (Allyson B. Levine of counsel), for respondents.


Rumsey, J.

MEMORANDUM AND JUDGMENT
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Department of Motor Vehicles suspending petitioner's motor vehicle dealer's license and license to operate a repair shop, and assessing civil penalties.
On July 22, 2014, petitioner, a used car dealer, sold a used 2006 BMW to Russell Wells Jr. and Kelly Murphy (hereinafter collectively referred to as the purchasers). After delivery, the purchasers discovered that the vehicle required significant repairs. After petitioner made certain repairs to the vehicle, the purchasers took the vehicle to a franchised BMW dealership
(hereinafter the dealership), where inspection revealed that the repairs made by petitioner had been improperly performed. The purchasers filed a complaint with respondent Department of Motor Vehicle (hereinafter DMV). After an investigation, DMV charged petitioner with violating 15 NYCRR 78.13 (c), for failing to inspect the vehicle before delivery, and with violating Vehicle and Traffic Law § 417, for falsely certifying that the vehicle was roadworthy. DMV also charged petitioner with willfully failing to provide quality repairs pursuant to 15 NYCRR 82.5 (g). All charges were sustained following a hearing. The penalties imposed for violating 15 NYCRR 78.13 (c) and Vehicle and Traffic Law § 417 consisted of a $1,000 fine for each violation and concurrent suspension of petitioner's license to operate a dealership for 180 days. The penalty imposed for violating 15 NYCRR 82.5 (g) was a $750 fine and suspension of petitioner's license to operate a repair shop for 90 days. Upon administrative appeal, DMV's [*2]Appeals Board affirmed the Administrative Law Judge's determination. Petitioner thereafter commenced this CPLR article 78 proceeding seeking to annul the determination, which was transferred to this Court.
The determination must be upheld if it is supported by substantial evidence in the record (see Matter of Khan Auto Serv., Inc. v New York State Dept. of Motor Vehs., 123 AD3d 1258, 1260 [2014])[FN1]. As relevant here, testimony was adduced at the hearing showing that the vehicle's engine had a significant oil leak and that the dealership also determined that a rear brake pad sensor was broken. These two conditions were the basis for DMV's determination that petitioner had failed to properly inspect the vehicle prior to sale, pursuant to 15 NYCRR 78.13 (c), and that it falsely certified that the vehicle was roadworthy, in violation of Vehicle and Traffic Law § 417.
15 NYCRR 78.13 (c) mandates that used vehicles be inspected prior to sale by requiring that 18 items of equipment be inspected for compliance with specified standards. Notably, the vehicle's engine was not included among the items subject to inspection, and there is no evidence that the defective rear brake sensor resulted in the vehicle failing to meet the specified standards applicable to brakes (see 15 NYCRR 78.13 [c] [15]). Accordingly, the determination that petitioner violated 15 NYCRR 78.13 (c) is not supported by substantial evidence.
Vehicle and Traffic Law § 417 requires that a retail dealer certify to a purchaser of any used motor vehicle that the vehicle complies with DMV regulations and, further, "that it is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery" (Vehicle and Traffic Law § 417). Thus, the mandated certification is two-fold — a dealer must certify that the vehicle was inspected in accordance with 15 NYCRR 78.13 (c) and, further, that the vehicle is roadworthy, as required by Vehicle and Traffic Law § 417 and 15 NYCRR 78.13 (b). The requirement that a vehicle be in a condition to render satisfactory service upon public highways is not satisfied when all of the items subject to inspection under 15 NYCRR 78.13 (c) meet the specified standards; rather, the condition of the entire vehicle must be considered (see Carter v General Motors Corp., 273 AD2d 804, 804 [2000]; see also Matter of Smith Pontiac-GMC v Commissioner of Dept. of Motor Vehs., 170 AD2d 933, 934 [1991]). In Matter of Smith Pontiac-GMC v Commissioner of Dept. of Motor Vehs. (supra), we held that "[i]t necessarily follow[ed]" from alleged problems with the vehicle's engine that the certification that had been provided pursuant to Vehicle and Traffic Law § 417 was false (id. at 934)[FN2]. Here, evidence that the engine had a significant oil leak — which resulted [*3]in oil running down the side of the engine and coating the underside of the car — and a broken rear brake sensor was sufficient to support a determination that the vehicle was not in a condition to render satisfactory service. Thus, DMV's determination that petitioner violated Vehicle and Traffic Law § 417 is supported by substantial evidence.
Petitioner was also charged with violating 15 NYCRR 82.5 (g) by willfully failing to make quality repairs, which are defined as "those repairs held by those having knowledge and expertise in the automotive field to be necessary to bring a motor vehicle to its premalfunction or predamage condition" (15 NYCRR 82.13 [a]). As relevant here, a license may be suspended or a civil penalty imposed only when the failure to make quality repairs is willful (see Vehicle and Traffic Law § 398-e [1] [i]). An action is willful when it is "performed knowingly, intentionally or deliberately" (Matter of Cervini Car Wash v Adduci, 167 AD2d 751, 752 [1990] [internal quotation marks and citations omitted]). Petitioner attempted to repair the oil leak by replacing a single broken head bolt. The vehicle was thereafter inspected by the BMW dealership, which determined that petitioner's repair was unsuccessful because the engine continued to leak oil. The dealership also stated that petitioner's attempt to repair the leak by replacing only the broken head bolt did not meet standard automotive industry practices, which require that the head gasket and all head bolts be replaced. The dealership also noted that petitioner used an incorrect replacement bolt. Vehicle specifications required that the exterior head bolt that petitioner replaced be aluminum to prevent electrochemical corrosion. Petitioner replaced the broken bolt with a steel bolt that had to be cut to complete the installation. The broken bolt that was removed and the proper
replacement bolt — both made of aluminum — were noticeably lighter than the steel bolt that was improperly installed by petitioner. This evidence was sufficient to establish that petitioner's efforts did not constitute a quality repair. Moreover, the lack of compliance with industry standards and the installation of the steel bolt that was noticeably different than the required aluminum bolt are sufficient to establish that petitioner's technician knew, or should have known, that the repair was improper and, therefore, establishes that the violation was willful. Accordingly, the determination that petitioner violated 15 NYCRR 82.5 (g) was supported by substantial evidence.
Finally, we reject petitioner's argument that the penalties imposed were excessive and disproportionate to the alleged misconduct. The suspension and civil penalties imposed are not so disproportionate to the offenses as to shock our sense of fairness, particularly since the fines that were imposed for petitioner's 12 prior violations of a similar nature did not deter additional misconduct (see Matter of Khan Auto Serv., Inc. v New York State Dept. of Motor Vehs., 123 AD3d at 1260; Matter of Mauboussin v Jackson, 302 AD2d 630, 632 [2003]).
Garry, P.J., Lynch, Clark and Aarons, JJ., concur.
ADJUDGED that the determination is modified, without costs, by annulling so much thereof as sustained the charge that petitioner violated 15 NYCRR 78.13 (c); petition granted to that extent and the fine and period of suspension imposed for such violation vacated; and, as so modified, confirmed.



Footnotes

Footnote 1: Petitioner's argument that the Appeals Board failed to consider its submissions is unavailing. The Appeals Board was not required to consider affidavits that had not been submitted at the hearing before the Administrative Law Judge (see 15 NYCRR 155.4 [b]). In any event, it appears that the Appeals Board did consider the arguments made in petitioner's affidavits but rejected them.

Footnote 2: Petitioner's argument that we previously decided — in Rayhn v Martin Nemer Volkswagen Corp. (77 AD2d 394 [1980], appeal dismissed 53 NY2d 796 [1981]) — that there is no violation of Vehicle and Traffic Law § 417 where a vehicle passes the inspection mandated by 15 NYCRR 78.13 (c) is unavailing. In that case, we decided only that proof that a vehicle did not pass inspection, when combined with the absence of proof that an appropriate inspection had been completed, was sufficient to establish a violation of Vehicle and Traffic Law § 417 (id. at 396-397). We did not consider whether a violation of Vehicle and Traffic Law § 417 can be established by a showing that the vehicle was not otherwise roadworthy.